Good afternoon. Jeffrey Jones for the appellant Noam Morgovsky. Mr. Morgovsky's defense counsel in this case. Could you please speak up a little louder? Yes, sir. The microphone might have been too far. Oh, if I could reserve three minutes for rebuttal, please. All right. Watch your clock and we'll try to give you a signal. Thank you. Mr. Morgovsky's defense counsel provided ineffective assistance by failing to raise an obvious challenge to a regulatory conspiracy crime. And this failure rendered Mr. Morgovsky's guilty plea not knowing involuntary. The district court in this case in denying the 20- Well, I'm going to interrupt you just briefly before we get into the merits of this. We did receive a filing from your client late last week, indicating that there was some difficulty in the relationship between the two of you. Yes. And just for the record, I wanted to ask you're here. You're representing him and you're comfortable proceeding. Oh, yes, absolutely. I am. I am. I am. Yes. Thank you. In denying Mr. Morgovsky's 2255 motion, the district court relied heavily on this court's 1976 decision in Guerrero Garcia. And Guerrero Garcia is easily distinguished. On the question of Congress's intent in passing the statute and whether Congress intended for the executive to be empowered to create a new conspiracy crime, a new criminal offense when there was already a general conspiracy statute that Congress was aware of. And the argument there would be that Congress's silence silences to conspiracy is indicates that Congress intended the general conspiracy statute to apply. Mr. Jones, before we get into that, could I ask you, please, to address the issue that the filing was late? Yes. Well, the filing was definitely eight days late, but Mr. Morgovsky has raised a very a lot of equitable tolling arguments and facts that he his his health, that he that he relied on a third party to deliver, deliver the to deliver his motion. A lot of we normally are looking at circumstances outside of the petitioner's control and the third party delivery was a choice entirely made by him. Absolutely. The court in there is a there are a lot of he invoked a lot of circumstances, a lot of things that happened in the prison access to the law library shutdowns during covid. I did detail a lot of a lot of that's detailed in the briefs. I think the main point is that the equitable tolling determination is is a totality of the circumstances. And I agree with what you said about the third party delivery. But the district court chose not to address it. And if if this court believes that the case turns on, turns on the timeliness, it should be for the district court to to evaluate that to you. Mr. Jones, I have a couple of questions for you on this issue. I thought that one of your arguments had to deal with the way one what's contained in the district court's docket at item number five hundred and thirty nine. That's true. The the date that the cert petition was filed. He believes that he relied on the docket as to when the cert petition was filed, which changes when the year begins to run. If you read the docket carefully, it doesn't say when the cert petition was filed. It says the petition for a writ of certiorari was denied. It is denied. Yes. Denied. Yes. I misspoke. Now, the what the note doesn't say is that it was denied on. I think it was October 4th. True. Is that correct? That's that's correct, Your Honor. Do we know if he received the letter from the Supreme Court that says that the petition for certiorari was denied or it's dated October 4th? I don't I don't believe we know that, Your Honor. That's that. I don't believe that's in the record. Have you ever seen it? No. Nor have I seen any allegation addressing that. Is there anything that's inaccurate about what's contained in note number in entry number five thirty nine? I don't believe so, Your Honor, except that I'm not looking at the docket right now. I have it on my computer. If I should look at it, I don't I don't recall that. But I believe that he was it simply was the when the denial was entered on the docket and he relied he relied on the date on the docket. Did anybody advise him to rely on the date in the docket? Does he claim that he doesn't allege that? So it's an error by him. In that case, I would say it was an error that an attorney wouldn't have made. And it's a it's a long list of things he believes caused him to miss the date by eight days. Well, it what struck me as a little bit odd was it says after it says the petition for writ of certiorari is denied, then there's a couple of initials, which I gather are the docketing clerks. It says court staff. Then there's a parentheses that says filed on ten, thirteen, twenty one. Another set of parentheses entered on ten, fifteen, twenty one. You kind of have to know how to read a docket to understand what those are. Or what those mean, I should say. I agree with that, Your Honor. OK. You were on your first point on IAC. Yes, yes. I believe the Garcia, the Garcia, the gorilla Garcia decisions easily distinguished here. It how with regard to Congress and Congress's intent. And it was a it's another it's a separate statute. And the court there relied on legislative legislative history regarding it, regarding adding an attempt offense. That's not present. That's not present here with respect to conspiracies. And adding a conspiracy is essentially a new crime as opposed to a lesser, a lesser version of the of the statutory statute. And the one we have before us, the word control is still in both statutes, correct? Absolutely. The president delegates control. Pardon me, this Congress delegates control to the president as to making regulations which include criminal regulations, correct? That's correct, Your Honor. Yes. So why is control sufficient to allow an attempt to violate an arms export act, but not to criminalize a conspiracy to the conspiracy was already criminalized? And it's a much bigger it's a much bigger reach to say that Congress intended an additional conspiracy offense when there already was a conspiracy offense that applied. Now, is this how do you square that with the major questions doctrine that has recently been coming out of the Supreme Court? Is this a major questions doctrine? I think I don't believe this case is a major question. And I believe the major question doctrine is it's analogous. I think the analogy here is the rule of lenity. We're not dealing with the executive addressing a major question as far as adding the conspiracy statute. But the statute needs to be to the extent the statute is ambiguous. And here it's more than ambiguous. It's it's absolutely silent as to conspiracies. The statute should be construed in favor of of the defendant, which in this case would mean the general conspiracy statute serves serves to criminalize that conduct, not the additional one that was created by the executive. Well, when you read this regulation, 22 CFR 121 127.1 violations. It starts off with a without first obtaining the required license or other written approval from the Directorate of Defense Trades Controls. It is unlawful. Then we go down to four. And it says to conspire to export, import, re-export, re-transfer, furnish or cause to be exported, imported, re-exported, re-transferred or furnished any defense article, technical data says. And all that struck me is, you know, maybe for this particular industry that's involved in the. Exportation or importation or whatever you want to call it, military items. They just want to be very specific and to alert people that it's a crime, you know, that it's unlawful to conspire to do any of these things. As opposed to the general conspiracy statute that applies across the board to any crime. I see, Your Honor. That would I'd say the distinction there is that. It not only puts people on notice, it quadruples the statutory maximum and eliminates the requirement of an overt act. And that's that's the difference between the regulatory conspiracy offense and the general statute. But the violation here is actually a violation of the statute, correct? If the regulation is valid, then committing a conspiracy becomes a violation of the statute. Yes. That's true. In the scheme of things, this is a pretty serious offense, correct? Yeah, it's pretty serious. He received 108 months for it. But I mean, just in the nature of what was going on. Exporting, exporting defense articles. And these were, I believe they were parts for rifle scopes that allowed allowed you to see in the dark. Right. Night scopes. It's, you know, it's it's it's it is exporting weaponry that the executive branch has deemed should not be exported without a license. That's indisputable. Also, the heat seeking manufacturers, in other words, to find out whether the troops behind the bushes. In the dark. Yes. Yes, that's true. It would allow people to thermal stuff. Yeah. And it's OK. Yes. Do you want to save the rest of your time for rebuttal? Yes. Thank you. May it please the court. Elizabeth Berenger for the United States. This court should affirm the denial of the 2255 motion for either of two alternative reasons. First, the defendant failed to overcome the presumption that his counsel provided competent assistance at trial. And second, he failed to demonstrate prejudice. And I'm going to address the deficiency prong first, even assuming like we're not we're not evaluating the validity of the statute in the first instance. This is, of course, couched in a Strickland claim. Are you abandoning the untimely nature of the filing? Certainly not, Your Honor. Would you like me to address that to start with? It's up to you. OK, well, I will. Just a few points is that, of course, this court may affirm for any reason supported by the record. It can affirm the denial of the 2255, regardless of the court's reasons. And even the court acknowledged it was assuming for argument's sake only that it was timely. Two, it's the defendant's burden. It's undisputed that the motion was untimely. Everyone agrees on that. It's about now we're talking about equitable tolling, which is the defendant's burden to establish. And as the court has recognized, there's no evidence that that was the only way he found out about the Supreme Court's decision from logging on to Pacer from his home. He got a letter. Let's assume that it was the only way. Looking at the docket is the only way he knew anything about the action of the Supreme Court. Then what? Even assuming that's true, this court's decision in Raspberry would decide that miscalculating the date and misunderstanding when his filing is due is not extraordinarily compelling reasons. And just to point out that the extraordinary and compelling reasons, sort of his misreading of the statute, it also has to cause the untimeliness. But that's not what caused the untimeliness. It's that he handed it off to a third party who delivered it late. So for those reasons, we would have given it to. Can I just ask you a couple of questions on this?  Case that is, do we know? Was he pro se in his petition for certiorari to the Supreme Court? I he was represented on appeal, but I am. No, you know, he actually motioned this court to appear pro se for his direct appeal. And I think this court granted it. So I believe I'm not I'm not exactly sure I would have to follow up on that. Did you did you get a copy of the Supreme Court's letter? I personally did not. But it is in the record. It is in the record. It is on the docket. And does it do you happen to recall? Well, the letter itself does not appear on our docket on the Ninth Circuit. No, in the district court docket. It was entered in the district court docket with the date on top of it. And it's also mailed from the Supreme Court to the defendant's last known address. Let me just maybe let me just check one thing here. I just want to see one thing. The district court docket. You say that the letter is on the docket. I believe that the copy of the I don't want to say something for sure. But I believe when I was reviewing this case, when I click on the link on Pacer for the district court docket, the letter popped up that from the Supreme Court clerk. But I don't want to say that for sure because it's been a long time. So I would have to review that. I haven't gone back and looked at the district court docket in preparation for today either. Is it also on the docket that the district court mailed it to the parties to a party who doesn't have electronic? I don't know about the district court, but the Supreme Court would have mailed it to the parties. The Supreme Court would have sent a letter to the parties. The council. Well, I'm going to have to follow up on that and provide the court more information about that. I don't have that information right now, but I will follow it up. If they send him a letter, then there's really nothing here. You read that you read this entry at 539. You know, you kind of understand how to read these dockets because it is a little confusing. Well, there is. I would just like to point the court to the fact that there is no evidence in the record that he did not receive a letter from another source. There isn't any evidence of that. And this is his burden to establish extraordinary and compelling reasons. He has not said he wasn't provided by either a council or for the Supreme Court any sort of letter. I just remember from reading his affidavit that he said that he read the docket entry and it was he took the dates from the docket entry. Well, I would argue that this court's decision, Raspberry, would control that. His misapprehension of what the deadline was is not does not establish extraordinary and compelling circumstances. I guess that's the best I can offer. And I can also look into that issue. But moving along to the deficiency prong, even assuming that there was some sort of legal validity to this motion, which the government disputes, council is not ineffective for failing to raise every non-frivolous argument. And we know from PRIMO that council's failure to take some sort of action is only deficient when no reasonable council would think it would fail. And that's not true here. That's not true that no reasonable council would think it would fail. In addition to the comments mentioned by the court, there's a uniform holdings from three circuits to have addressed this issue, that when Congress delegated this broad authority to the executive to control the exported defense articles and to issue regulations to control the export of defense articles, that broad delegation included authority to prohibit more than just the substantive violation. So we know that from case law. Not only do we know that from Garola Garcia, but Sue, the Fourth Circuit decision, sort of adopted Garola Garcia's reasoning into the modern age with the Armed Export Control Act. So that's the uniform finding. The defendants never pointed to one case that would contradict that finding. And given this interpretive consensus, that 2778 authorizes crimes beyond just the substantive violation, a competent attorney could have believed it would fail. But in addition to just this idea that it was likely to fail under current case law, this motion to dismiss in this context served very little purpose. And this is why we have a defendant charged with seven counts. We have the conspiracy, the Armed Export Control Act conspiracy, but we also have the money laundering counts, which carried a 20-year statutory maximum. It was a conspiracy count which he pleaded guilty. He pleaded guilty to the substantive offense of money laundering. And then there was a bank fraud conspiracy, two substantive bank fraud counts. I'm just talking about what's charged, not what he pled guilty. And the aggravated identity theft. So his counsel was facing seven charges. The export conspiracy was actually the least serious charge with the lowest statute. The 1028 had a lower, it was an additional two years. But the bank frauds were very serious charges. And then at sentencing, defense counsel would have realized that those counts would have all been grouped for sentencing. And they were actually grouped under the money laundering statute, under 2S1.1. And so the money laundering counts were going to carry the day and issue the same sentence, regardless of this conspiracy to export. So even if he had filed a motion to dismiss, got that charge dismissed, the government would have re-indicted with the conspiracy count, with the five-year statutory maximum. But all of the sentences ran concurrent. So it just wasn't any bang for the buck to file this motion. I think that he pleaded guilty to counts 10 and 11, which were conspiracy to export defense articles and not export defense articles. Isn't that what he did? So count nine was the conspiracy to export count. Counts 10 and 11 were just money laundering. One was a promotion, and one was a promotion, and then there was one of concealment. So two different money laundering counts. And then the underlying crime for the money laundering was exportation of, not conspiracy, but the actual exportation. You're right. I misspoke. So that's under the deficiency prong. Not only could the defense not show that no reasonable attorney would have thought the motion would have failed, but there were also strong tactical reasons why defense counsel would. And I would like to point the court's attention to ER 378 and 386. That was a pleading file by counsel in the context of the motion to withdraw at sentencing, where there was a declaration by one of the two co-counsels that represented Mr. Morgofsky by the sentencing phase. And they explained that they'd performed substantial research in connection with the defendant's theory of his defense, and they found that it was not supported by current precedent. And as this court found in Strickland, informed decisions after thorough investigation are virtually unchallengeable. So it was their assessment, based on their review of the case law, that it was not a viable defense. And also they had good reasons, because he had all these other charges pending. There wasn't really any reason it would help him. So I did, if there are any questions about deficiency, move a little bit into the prejudice prong, because of course he has to prove both. I have just one question. Why was it necessary to rely on this particular conspiracy provision rather than the general one? Well, Your Honor, there's over a hundred conspiracy statutes. And often those conspiracy statutes give a higher statutory maximum. And especially in the area like this of national security, as the Supreme Court recognized in Ionelli, sometimes a concerted action by people is just as, or even more dangerous than the substantive offense. And the Congress has recognized that in the area of national security. It's just like 233, what's another one, 2339B. Congress often authorizes much higher statutory maxims with no overt act requirement in this field, recognizing the severity of the crime. That it's a really serious and probably more than just the standard five-year stat max for the conspiracy statute. You could have, let me ask you, is it any easier for you to file a conspiracy charge under this particular provision as opposed to the general one in what's required to be proved at trial? I'm acting beyond the record right now, but I would say that it would probably be easier to prosecute this crime because there's no overt act requirement. But also it's more advantageous because you get the 20-year statutory max. So it sort of encompasses the severity and the seriousness of the charges in a way that perhaps 371 does not. I see. I mean, there's many, I mean, we had a couple cases. There was one in the Ninth Circuit and one in maybe the Seventh Circuit that was cited in our brief about the kidnapping statute. What are the reasons that a prosecutor would charge 371 versus a conspiracy under the kidnapping statute? And that's a matter of prosecutorial discretion. Many elements go into that decision and it probably depends just a lot on the prosecutor's discretion. Was there any discussion of sentencing that 371 does require an overt act but this statute does not? This statute does not require an overt act and 371 does. I know, but was that mentioned to the defendant at sentencing when he was read the elements of the offense? I would have to follow up on that, but I believe his defendant waived the reading at the change of plea of the offense. But this, I mean, he did raise whether his plea was knowing and voluntary in his first direct appeal. He said, these charges are very complex. I didn't really understand them. I didn't really knowing and voluntarily decide that. And this court rejected it and said that the records show that his plea was knowing and voluntary and that he did understand the elements of the offense. And I can see when you look at the record as a whole, this is a very sophisticated defendant. He was very aware of what was in the indictment. And just to touch on this for the prejudice, oh, I see my time is expiring, but if you look at the Hill test, whether there's a showing of a reasonable probability the defendant would have not pleaded guilty if he'd known about this. The defendant knew about this argument before he pleaded guilty. And we know that from 4 ER 605. That's at the sentencing where he says, I've had disputes with my attorney all along. We've had disputes about this very issue about whether the statute authorizes this regulation. But he still pleaded guilty and he never sought to withdraw his plea. So under those facts, how could he possibly prove that there's a reasonable probability he would not have pled guilty? Also when we looked at PRIMO, it looks to what would have happened at trial to this defendant. And for the reasons I already stated earlier, he can't show he'd be any better off going to trial. His sentence would not have been longer. Whether it was a 108-month sentence or a 60-month sentence on this specific count for count nine, he was still exposed to that 108 concurrent sentence for the money laundering counts. So he just can't prove prejudice. The only thing he can prove the least in this entire case is prejudice. And also as far as prejudice, there's no dispute in this case that he was guilty of exporting defense articles. There's no dispute about that. It's just about what the stat max would be. And unless the court has any additional questions, I would just ask the court to affirm the denial of the 2255 motion. Thank you, counsel. Judge Bea, to address your question, I'm certain that when he pleaded guilty, there was no discussion about the difference between the general conspiracy statute and the regulatory conspiracy. The lack of the overt act or the different statutory maximum, that wasn't discussed during his plea. Judge Paez, to your point, I had a chance to look at the docket entry. I believe looking at that docket entry, I think anyone would read it as saying that the CERC petition was denied on October 13th. And it's quite plausible he did that. I think the only difference is an attorney would not have relied on the district court docket to determine when the Supreme Court had denied CERC. But he alleges that he did. And I would just... Do you know how he would have accessed that docket? What's that? How would he have accessed the district court docket to see that notation? I have it on my... But how would he do that? Would he do that in the law library, in the prison? How would he see the docket? I assume he would have... I assume he would have received a paper copy of it. Of the docket? Of the docket, yes. When? When he's in prison. I'm guessing here, to be honest, I don't know how he would have received notice. I assume his... What I'm getting at is, if it turns out that the letter, the Supreme Court's letter is actually attached to that docket entry, then this question about, is the docket entry confusing, goes away because the letter is right there. So how is he accessing the docket? I honestly don't know how he accessed the docket. I think that goes... That raises an important point, though, the whole discussion of the statute of limitations does, is that regardless how one comes out on the timeliness question, this is very fact intensive. And case law says the district court should make that determination in the first instance. If this court decides that this case comes down to the statute of limitations, that's going to decide the question, whether it's timely, the district court should make that determination in the first instance. Doesn't he have to allege facts which are sufficient for the district court to make that determination, and he hasn't done that here? Absolutely, Your Honor. I'm saying, my point is that if we accept his allegations as true, there is a basis for equitable tolling. It's also, it's equitable. And that's another determination for the district court. What is the basis for equitable tolling? Give it your best shot. Oh, there's a litany of bases. In his motion for equitable tolling, he filed a written motion for equitable tolling and went on for many pages about the conditions in the prison and how he'd been prevented from filing on time and he had serious health problems. Were any of those extraordinary? What's that? Isn't that the issue? Extraordinary circumstances? Were any of those allegations extraordinary with the meaning of? I believe, when you consider the totality, when you consider the totality of the circumstances and the fact that he's, we're talking about eight days that he missed the deadline, I believe there's a strong case for the district court, in its discretion, deciding that equitable tolling is warranted. I have no idea how the district court would come out on that, but I think there would certainly be a basis to find equitable tolling, potentially. And it depends on how the facts come out and what you, what you believe about what he said. All right, we've taken over your time. Are there any other questions for my colleagues? I don't think so. All right, we appreciate council's representation in this matter. The United States v. Morgowski is submitted for decision. Thank you. We're in recess. All rise.
judges: PAEZ, BEA, FORREST